**HOOD et al. v. ASKEY et al.** (No. 11030.)

(Court of Civil Appeals of Texas. Fort Worth.
Feb. 28, 1925. Rehearing Denied
March 28, 1925.)

1. **Pleading** ⬠111—**Proper plea of privilege prima facie proof of facts stated, requiring plaintiff to prove exception to general statute.**

Plea of privilege in proper form and properly verified is prima facie proof of facts stated, and entitles the party so pleading to be sued in county of his residence, unless opposing party controverts such facts by affidavit, and by evidence establishes existence of an exception to the general venue statute.

2. **Venue** ⬠5(3)—**Petition not one of trespass to try title nor involving right of title to land.**

Relative to right of certain defendants to be sued in county of residence, petition *held* not to set up a cause of action of trespass to try title to land, or one involving right of title to the land.

3. **Venue** ⬠8—**To defeat plea of privilege, alleged fraud must be shown to have been practiced in county of action.**

To defeat plea of privilege because of action being founded on fraud of defendants, there must be proof of the fraud having been practiced and committed in the county where action was brought, so as to give venue there.

4. **Venue** ⬠22(3)—**To defeat plea of privilege evidence not only of residence of other defendant, but of his participation in wrong, necessary.**

To defeat plea of privilege on ground of another defendant being a resident of the county where action was brought, there must be evidence, not only of his residence, but of his participation in the wrong alleged.

Appeal from District Court, Wise County; F. O. McKinsey, Judge.

Action by W. H. Askey and others against C. E. Hood and others. A plea of privilege of defendant Hood and others was overruled, and they appeal. Reversed, and cause ordered transferred.

Merritt & Leddy, of Dallas, for appellants.
Owsley & Owsley, of Denton, and H. E. Lobdell, and Frank J. Ford, both of Decatur, for appellees.

BUCK, J. Plaintiffs, W. H. Askey, A. J. Ogle, B. R. Floyd, and Lucy Milton and her husband, David Milton, sued C. E. Hood, F. T. N. Hood, E. G. Graves, C. M. Jasper, Ray Haggard, and W. C. Armstrong, alleged to reside in Collin county, and T. F. Hunter, alleged to reside in Wichita county, and J. M. Scott, alleged to reside in Wise county.

Defendants Graves, Jasper, Haggard, Armstrong, and C. E. Hood filed a verified plea of privilege to be sued in Collin county, the county of their residence, which seems to be in proper form. To this plea the plaintiffs filed a controverting answer, duly verified by one of the plaintiffs, in which the plaintiffs denied certain allegations made in the plea, and further alleged that in truth and in fact the plaintiffs' petition alleged, and they expected to prove, that "each and all of the parties to the conspiracy in pursuance of which the said contract for the private sale of said land was entered into and breached, and that each and all of the defendants conspired and acted together in and about the making of said contract and the breach thereof," etc.

[1] It is well settled in the authorities that a plea of privilege in proper form and properly verified is prima facie proof of facts stated, and entitles the party so pleading to be sued in the county of his residence, unless the opposing party controverts such facts by affidavit, and by evidence establishes the existence of an exception to the general venue statute. First National Bank of Bowie v. Bulls (Tex. Civ. App.) 243 S. W. 577; Ray v. Kimball (Tex. Civ. App.) 207 S. W. 351; Murphy v. Dabney, 208 S. W. 984; Shafer v. Swift (Tex. Civ. App.) 256 S. W. 309; Cumming v. Chilson (Tex. Civ. App.) 265 S. W. 1099.

The plaintiffs, as proof to establish the venue in Wise county, introduced the first-amended original petition, as set out in the transcript, and also proof that the land mentioned in said petition was situated in Wise county, and that defendant J. M. Scott resided in Wise county, and that the contract of sale was written in Wise county, signed T. J. McMurray, as attorney for Scott. This was all the proof offered.

[2] We do not believe that the petition sets up a cause of action of trespass to try title to the land, or one involving the right of title to said land. The petition is quite lengthy and involved, and allegations were made that the plaintiffs and defendants Graves, Jasper, Haggard, and Armstrong entered into an agreement and partnership for the purpose of acquiring title to all that certain tract of land situated in Wise county and described in plaintiffs' petition, and that the deed to said land was made to A. J. Ogle, as trustee, for the purchasers, and said trustee paid cash $5,000, and gave his notes for the balance of $9,300, payable to C. E. Hood, and that said Ogle executed and delivered to the defendant F. T. N. Hood, as trustee, a deed of trust upon said tract of land; said deed of trust containing the usual clauses of warranty and power of sale. It was further alleged that the joint owners of the land, for the purpose of developing the oil industry and procuring an oil field in said territory, joined with others and entered into a contract with the "Keystone Oil

Company" to sink a well to the depth of 3,500 feet or deeper, if necessary, to procure oil in paying quantities upon a tract of land known as the "Graves tract," adjoining the tract of 143 acres purchased by the plaintiffs and the named defendants; that the Keystone Oil Company undertook to drill a well on said Graves tract of land under its said contract, and did drill the same to a depth of about 3,200 feet, and found such quantities of oil as indicated that they were in a paying oil field, but they failed to complete the well; that, as a part of the consideration paid to said Keystone Oil Company for its work in drilling said well, the said A. J. Ogle, for himself and those jointly interested with him, conveyed an oil lease upon 43 acres of the above-described tract of 143 acres; that thereafter A. J. Ogle and those interested with him in the tract of land above described, and others interested in contiguous land, entered into a contract with the defendants J. M. Scott and T. F. Hunter, by which, in consideration of leases upon about 5,000 acres of land in said territory, the said Scott and Hunter undertook to drill and complete another well on said Graves tract of land to the depth of 3,270 feet, unless oil or gas in paying quantities was sooner found, and as their part of said consideration the said A. J. Ogle and those concerned with him in the 143-acre tract of land conveyed to the said J. M. Scott and T. F. Hunter an oil and gas lease upon the remaining 100 acres of said tract of land; that the said Scott and Hunter completed their said contract and drilled said well started by them on said Graves tract of land to said depth of 3,270 feet; that after the said Scott and Hunter had begun drilling the said well on said Graves tract of land the defendants Graves, Jasper, Haggard, and Armstrong, designing and intending to confuse the plaintiffs and cast a cloud upon their title to the tract of land aforesaid, and diminish the value thereof, set up a claim that the said lease of 100 acres of said land executed by the plaintiff A. J. Ogle to the defendants Scott and Hunter had been executed without authority and was illegal and void, and the said defendants so interested with the plaintiffs in and to said tract of land failed and refused to pay their part or any part of the principal and interest of the said promissory notes above mentioned that were secured by deed of trust to the said. F. T. N. Hood, trustee, and the said land was by the said trustee advertised to be sold under said deed of trust in the city of Decatur, on the first Tuesday in March, 1923, the same being the 6th day of March, 1923; that at the time the said tract of land was so advertised for sale and at the time it was sold on the 6th day of March, 1923, it was of the reasonable market value for agricultural, purposes of $14,-300, and that on account of the oil industry that had been developed in that territory it

had an additional oil value of $14,300, so that the actual cash market value of said tract of land was the sum of $28,600; that, in addition thereto, the cash market value of said land was the sum of $200 an acre, and that if said land had been fairly sold under said deed of trust without interference on the part of the defendants the same would have brought something like its reasonable value; that on the said 6th day of March, 1923, the said lease value and royalty value of said tract of land depended largely upon the keeping and maintaining of the derrick and oil rig which the defendants Scott and Hunter had placed upon the said Graves land, and upon the day of said sale and prior to the sale of said land, the defendant Hunter, speaking and acting for himself and the defendant Scott, proposed to the plaintiffs that they, Hunter and Scott, would bid for said land the full amount due upon said promissory notes, and notified the plaintiffs, together with a large crowd that had gathered to attend the sale of said land, that, if any one else made a greater bid than that for said land, they, the said Scott and Hunter, would tear down their said derrick and remove their rig from off of said Graves tract of land and abandon the well; that immediately after the defendant Hunter had made said proposition and statement the land was offered for sale by the said F. T. N. Hood, trustee, and the said Scott and Hunter bid therefor $11,159, which was the amount of the principal and interest due upon said promissory notes, and, by reason of said statement that had been made by the said Hunter that if any one else made a greater bid on said land they would abandon the well and remove their derrick and rig from the Graves tract of land, there were no other bids for said land, and the same was by the said trustee struck off and sold to the said Scott and Hunter for said sum of $11,-159, and that they became the purchasers thereof at said public sale.

It was further alleged that, after said tract of land had been sold to the said Scott and Hunter, the said defendants Scott and Hunter and F. T. N. Hood made and entered into another agreement by the terms of which said Hunter and Scott agreed to deposit $4,659 in the bank, to be paid to F. T. N. Hood upon the delivery by said Hood to the bank for Hunter and Scott a certain trustee's deed, executed by F. T. N. Hood, under date of March 6, 1923, conveying the 143 acres described in the petition to Hunter and Scott. This conveyance was to be made by said Hood as trustee, and under and by virtue of the deed of trust on said land theretofore executed by plaintiff A. J. Ogle. It was further provided that Hunter and Scott were to execute their promissory vendor's lien notes for $6,500.

It was further alleged that, in the execution of said contract for the private sale

of said land, said defendants Scott, Hunter, C. E. Hood, and F. T. N. Hood "conspired and acted together without the knowledge or consent of the plaintiffs, or of either or any of them, and that the defendants C. E. Hood and F. T. N. Hood unlawfully and wrongfully failed to perfect and carry out the sale of said land to the said Scott and Hunter as it was bid off to them, and the said Scott and Hunter wholly failed to comply with their said contract for the purchase of said land at said private sale, and the said defendants caused the said written contract for the sale of said land at private sale to be filed and recorded in the deed records of Wise county, Tex., and that thereby the title to said 143-acre tract of land was beclouded and the value thereof greatly reduced."

It was further alleged that subsequently C. E. Hood and F. T. N. Hood, acting together, on April 3, 1923, made another pretended sale of said land at public vendue under said deed of trust, and the land was sold to C. E. Hood for $4,750, that being the highest and best bid, and that in pursuance of said pretended sale said F. T. N. Hood, as said trustee, executed and delivered to C. E. Hood a deed of conveyance to the said 143 acres.

In their prayer for relief plaintiffs said:

"Wherefore plaintiffs sue and pray that, the defendants having been cited to appear and answer this petition, on the trial hereof the said pretended sale of said tract of 143 acres of land under said deed of trust be vacated, annulled, and set aside, and that in addition thereto the plaintiffs recover their said damages in the sum of $15,000 in addition to such special damages as they are entitled to recover from the said Scott and Hunter, and such further special damages as they are entitled to recover from the other defendants above named, and, in the event that the court should hold that the said sale cannot be vacated and set aside, then that the plaintiffs recover their said damages in the sum of $20,000, and $24,000 above mentioned, for costs of suit and for such other and further relief as the plaintiffs may be entitled to, either in law or equity."

The allegations are made that on the occasion of the sale under the deed of trust on March 6, 1923, T. F. Hunter, speaking and acting for himself and J. M. Scott, proposed to the plaintiffs that they (Hunter and Scott) would bid for said land the full amount due on said promissory notes, and so notified the plaintiffs and the others gathered to attend the said sale of the land, but that, if any one else made a greater bid than that for said land, the said Hunter and Scott would tear down their said derrick and remove their rig from off said Graves tract of land and abandon the well; but there is no proof that he said what is claimed, or that

if he had said it such statement became a part of plaintiff's cause of action. In fact, there is no proof that any of the actions and transactions alleged by plaintiffs on the part of the defendants as giving cause for action occurred in Wise county. There is no allegation made that the resident defendant, J. M. Scott, had any part in the last sale of the land, on April 3, 1923, under which C. E. Hood bought the land for $4,750.

[3] While the suit seems to be founded on the alleged fraud of the defendants, there is no proof that any such alleged fraud was practiced and committed in Wise county, so as to give venue in that county. In the case of Richardson v. Cage, 113 Tex. 152, 156, 252 S. W. 747, 749, by the Commission of Appeals, it is said:

"Without undertaking to establish a rule as to the general burden of proof under the provisions of article 1903 of the statutes, where the plea of privilege has been controverted by the plaintiff, we will state that there are numerous decisions to the effect that in cases where the plaintiff seeks to maintain his suit against a defendant outside the county of his residence under certain exceptions to article 1830, among which is included exception 4, it is required of him to allege and prove the facts necessary to clearly bring his case under the particular exception claimed by him as authority for the action."

See Penix v. Davis (Tex. Civ. App.) 265 S. W. 718, by the Austin Court of Civil Appeals.

[4] We do not think that plaintiffs have established the existence of any facts or circumstances which would fix the venue of the suit against the Collin county defendants in Wise county. The only ground for holding that J. M. Scott is liable, and that therefore all of the defendants may be sued in Wise county, is the allegation that Hunter, "speaking and acting for himself and the other defendant J. M. Scott," said that if his bid was not accepted for the land on the occasion of the sale of March 6, 1923, they would tear down their derrick and move their rig off the Graves tract and abandon the well, and the further fact that Hunter and Scott, the latter by T. J. McMurray, signed a private contract of sale with F. T. N. Hood, acting as trustee, and through the fault of somebody, it is not plain who was responsible, the sale was not completed under the contract. Plaintiffs alleged that this contract of private sale was unauthorized, and that no rights could accrue thereunder. But at least they should have introduced evidence to support, not only the allegation of the residence of J. M. Scott in Wise county, but his participation in the wrongs complained of. We do not think this was done.

Therefore the judgment of the trial court is reversed, and the cause ordered transferred to Collin county.